UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARK W. CARPENTER,

                    Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                    Defendant.

Case No. 3:10-cv-05594-RBL-KLS

REPORT AND RECOMMENDATION

Noted for July 22, 2011

Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be affirmed.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On February 16, 2005, plaintiff filed an application for disability insurance benefits,

REPORT AND RECOMMENDATION - 1

alleging disability as of August 30, 1995, due to pain in his back and legs, manic depression, neck and back injuries, and a drinking problem. See Administrative Record ("AR") 19, 57. His application was denied upon initial administrative review and on reconsideration. See AR 19, 40, 43. An administrative hearing was held before an administrative law judge ("ALJ") on November 26, 2007, at which plaintiff, represented by counsel, appeared and testified, as did a lay witness. See AR 583-608.

On March 26, 2008, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 19-24. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 24, 2010, making the ALJ's decision defendant's final decision. See AR 4; see also 20 C.F.R. § 404.981. On August 23, 2010, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1-#6. The administrative record was filed with the Court on November 15, 2010. See ECF #13. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in his evaluation of the evidence in the record at step two of the sequential disability evaluation process[1]; (2) in finding none of plaintiff's impairments met or medically equaled any of those contained in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"); (3) in assessing plaintiff's credibility; (4) in evaluating the lay witness evidence in the record; (5) in finding him to be unable to perform his past relevant work; and (6) in finding him to be capable of performing other work existing in significant numbers in the national economy. For the reasons

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.

REPORT AND RECOMMENDATION - 2

set forth below, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that [his] disability existed on or before" the date his insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status). Plaintiff's date last insured was December 31, 2000. AR 20. Therefore, to be entitled to disability insurance benefits, plaintiff must establish he was disabled prior to or as of that date. Tidwell, 161 F.3d at 601.

REPORT AND RECOMMENDATION - 3

## II. The ALJ's Step Two Determination

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85-28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect his ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell, 161 F.3d at 601. The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

In this case, the ALJ found plaintiff's cervical and lumbar degenerative disc disease and post traumatic stress disorder to be severe impairments through his date last insured. See AR 20. In so finding, the ALJ further stated that:

> The medical evidence indicates that the claimant was treated at the Veterans Administration Medical Center from September 1996 to June 2005. The claimant complained of neck pain. In September 1998, the claimant underwent physical therapy that relieved his neck pain. In August 2000, the claimant was diagnosed with chronic neck and back pain. Progress notes revealed that the claimant had stopped taking most medications and in fact, he was not on any medications for his neck and back pain. Additionally, progress notes did not show any significant clinical findings prior to his date last insured of December 31, 2000 (Ex. 1F).

REPORT AND RECOMMENDATION - 4

> In January 2000, the claimant was diagnosed with post traumatic stress
> disorder with depression and anxiety. However, mental status examination
> was unremarkable. The doctor assessed a global assessment of functioning
> score of 50. Additionally, progress notes did not show any significant clinical
> findings prior to his date last insured of December 31, 2000 (Ex. 1F).

AR 20-21. In arguing the ALJ erred here, plaintiff first asserts that in citing only to "Ex. 1F," a 451-page exhibit, the ALJ failed to perform a complete and thorough review of the record. But what is important is the accuracy of the ALJ's evaluation of that evidence. That is, an ALJ will have satisfied his or her duty to fully and fairly evaluate the medical evidence in the record not by the manner in which he or she cites to specific pages contained therein, but by setting forth a sufficiently detailed summary of that evidence and then giving his or her interpretation thereof. See Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). This the ALJ did.

Plaintiff also argues the ALJ's statements that the record showed that prior to the date last insured in this case, plaintiff's pain was relieved by physical therapy, that he had stopped taking most medications (and took none for his neck and back pain) and that progress notes showed no significant clinical findings, are not supported by substantial evidence. The undersigned agrees the record does not fully support the ALJ's statement regarding the effectiveness of the physical therapy plaintiff underwent. See AR 281, 492, 496-97, 500, 507-08; but see AR 289, 461, 474, 494-95, 497, 499, 511. In addition, the progress notes contain at least some significant objective clinical findings. See AR 275, 281, 289, 461, 486, 492-97, 500-01, 511, 545-46. On the other hand, the record does support the ALJ's statement concerning stopping medications. See AR 232, 270, 454 ("Patient has stopped staking most medications at this time and, in fact, is not on any medications for neck or back pain."), 459, 491, 522. Indeed, as discussed in greater detail below, plaintiff's non-compliance with recommended treatment in general – including with respect to taking medications – is fairly widely reported in the record. See AR 223, 225, 272,

REPORT AND RECOMMENDATION - 5

284, 451, 456-57, 461-62, 477-78, 502-05, 519-22; but see AR 518.

Any errors committed by the ALJ in regard to the above, however, the undersigned finds to be harmless. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion). This is because, as noted above, the ALJ found plaintiff did have severe physical impairments prior to his date last insured, and plaintiff has not argued or pointed to any evidence in the record to support a determination of severity with respect to any other physical impairment. See Carmicle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity will not be addressed); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued ordinarily will not be considered). Nor do the clinical findings also noted above support such a determination. See Tackett v. Apfel, 180 F.3d 1094, 1098-89 (9th Cir. 1999) (claimant has burden of proof on steps one through four of the sequential disability evaluation process).

Plaintiff asserts as well that the ALJ failed to comply with his duty to fully and fairly develop the record, apparently because the ALJ stated "[t]he medical evidence indicate[d he] was treated at the Veterans Administration Medical Center from September 1996 to June 2005" (AR 20), while an onset date of disability of August 30, 1995, has been alleged. It is true that an ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). But it is only where the record contains "[a]mbiguous evidence" or the ALJ has found the record to be "inadequate to allow for proper evaluation of the evidence," that the duty to "conduct an appropriate inquiry" is triggered. Id. (citations omitted); see also Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). Here, there is no indication that the record is so ambiguous or lacking

REPORT AND RECOMMENDATION - 6

in adequacy to trigger the duty to conduct a further inquiry. Specifically, plaintiff has made no showing that there exists any evidence for the period between the alleged onset date of disability and September 1996, that would cast doubt on the ALJ's disability decision.

III. The ALJ's Step Three Determination

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in the Listings. See 20 C.F.R § 404.1520(d); Tackett, 180 F.3d at 1098 (9th Cir. 1999). If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id. The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. See Tacket, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also SSR 96-8p, 1996 WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id.; see also

REPORT AND RECOMMENDATION - 7

Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis in original). However, "symptoms alone" will not justify a finding of equivalence. Id. The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings). This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

Here, the ALJ found plaintiff had no impairments or combination thereof that met or medically equaled any of those contained in the Listings. See AR 21. Specifically, the ALJ found in relevant part that plaintiff's cervical and lumbar spine conditions did not result "**in the requisite loss of neurological functioning to meet or equal** . . . **Listing 1.04"** (disorders of the spine), and that "[n]o treating, examining or reviewing medical source in the record reported sufficient medical and diagnostic findings to support" a finding that her physical and mental impairments, again both singly and in combination, were "presumptively disabling" at this step.

REPORT AND RECOMMENDATION - 8

<u>Id.</u> (emphasis in original).

Plaintiff argues the ALJ erred here by failing to take into account a determination that he was found to have a 100% non-service connected disability by the United States Department of Veterans Affairs ("VA"), or provide "any analysis resembling a connection to the VA's medical records and how [he] suffers from the mental disorders and pain caused by his neck and back conditions." ECF #17, p. 8. As to the ALJ's alleged lack of analysis regarding the VA's medical records and pain and mental disorders, plaintiff has failed to point to any evidence in the record that, to the extent the ALJ's analysis was deficient, the evidence in the record concerning these issues would support a finding of disability at step three. Indeed, plaintiff has failed to explain in exactly what way or ways the ALJ's analysis was deficient here.

As for the VA determination of disability, it is true that in a progress note dated February 1, 2000, it was reported that plaintiff was "presently 100% [non-service connected disabled] for physical injuries." AR 479 (noting further that plaintiff "initially had 10% [service connected disabled] for hearing loss."). But this information appears to have come from plaintiff's own self-report (<u>see id.</u>), and, as discussed in greater detail below, the ALJ did not err in finding him to be not fully credible. Nor does the record contain an actual VA determination of such 100% non-service connected disability for that period, and plaintiff has made no showing that such a determination actually exists. Indeed, the only VA determination of disability that is contained in the record is one dated July 6, 2007, which reads in relevant part as follows:

### **INTRODUCTION**

The records reflect that you are a veteran of the Vietnam Era and Peacetime. You served in the Navy from June 4, 1974 to February 15, 1977. You filed a claim for increased evaluation that was received on August 10, 2006. Based on a review of the evidence listed below, we have made the following decision(s) on your claim.

REPORT AND RECOMMENDATION - 9

## **DECISION**

1. Evaluation of cervical spine degenerative disc disease, which is currently 10 percent disabling, is increased to 20 percent effective August 10, 2006.

2. Service connection for right upper extremity cervical radiculopathy is granted with an evaluation of 20 percent effective August 10, 2006.

3. Service connection for headaches is granted with an evaluation of 0 percent effective August 10, 2006.

4. A decision on entitlement to compensation for posttraumatic stress disorder is deferred.

## **EVIDENCE**

- Evidence of record contained in your VA claim file.
- VA letters(s) to you, dated 8/22/06, 2/2/07, and 5/21/07, requesting evidence to support your claim.
- Results of VA examination(s) conducted on 9/7/06.
- Personal statements from you, received 9/8/06, 8/17/06, 2/26/07, and 6/7/07 . . .
- Treatment records from VA Puget Sound Health Care System, 3/12/98 to 12/15/06.

AR 46. This disability determination shows that at least in terms of service connected disability, plaintiff was found to be only 40% disabled in early August 2006 – long after his insured status had expired – up from no more than 10% disabling, which apparently has been in place since sometime in June 1998. See AR 292 ("According to our records this patient is currently [non-service connected or service connected disabled] less than 10%.").

It is true that an ALJ must consider a VA determination of disability, even though such a determination is not binding on defendant. See McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002); 20 C.F.R. § 404.1504. It also is true that the ALJ "must ordinarily give great weight to a VA determination of disability." McCartey, 298 F.3d at 1076. This is due to "the marked similarity" between the two federal disability programs:

> Both programs serve the same governmental purpose--providing benefits to

REPORT AND RECOMMENDATION - 10

> those unable to work because of a serious disability. Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims. . . . Both programs have a detailed regulatory scheme that promotes consistency in adjudication of claims. Both are administered by the federal government, and they share a common incentive to weed out meritless claims. The VA criteria for evaluating disability are very specific and translate easily into SSA's [the Social Security Administration's] disability framework.

Id. However, "[b]ecause the VA and SSA criteria for determining disability are not identical," the ALJ "may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." Id. (citing Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001).

Defendant does not contest that the ALJ erred in failing to address the issue of the VA's disability determination in his decision, but argues here too the ALJ's error was harmless. The undersigned agrees. As discussed above, the only evidence that plaintiff has been found to be 100% disabled – either prior to or after his date last insured – appears to be plaintiff's own self-report to that effect. Contrast AR 292 (where specific reference to plaintiff's less than 10% non-service or service connected disability contained in VA records is noted) with AR 479 (where no such actual VA records are mentioned). The 10% – or even less than that it appears – disability determination that apparently was made prior to the date last insured, furthermore, seems to have been related to a claim of hearing loss as noted above, whereas no claim of hearing loss resulting in disability has been made or shown to exist in this case.

Plaintiff argues there can be no harmless error finding in this case, because "[i]t must be self evident that [his] lengthy process with the [VA] disability process . . . ultimately reveals the severity of [his] condition that has existed for years." ECF #19, p. 5. Plaintiff's argument here, however, is mere speculation, as he points to no evidence in record regarding the length of time

REPORT AND RECOMMENDATION - 11

it took him to be determined disabled. Nor is there any indication that even the determination of 40% service connected disability relates to the relevant period of time here, as that determination expressly was found to begin as of August 10, 2006. For all of the above reasons, therefore, the undersigned finds the ALJ committed harmless error here.

IV.  The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

REPORT AND RECOMMENDATION - 12

symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

In this case, the ALJ's adverse credibility determination reads in relevant part as follows:

> The claimant testified that back pain and depression prevent him from being able to work. He testified that he had mood swings and is depressed. The claimant further testified that he has a lot of pain which interferes with his ability to sleep and medication does not afford him any greater ability to function. . . .
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> The claimant's post traumatic stress disorder and back pain does not present functional limitations to the extent alleged by the claimant. There is no diagnostic evidence to support a significant limitation of functioning due to post traumatic stress disorder [sic] back pain. Despite his allegations of forgetfulness and lack of concentration, the claimant reported that his is able to pay bills, count change, handle a savings account and use a checkbook/money orders (Ex 5E). Medical records show that the claimant was able to work a sheltered work program and progress to living on his own in 2000 (Ex. 1F).
>
> Based on this record, the claimant has only required conservative care. Efficacy of medication is also a factor which belies the claimant's subjective complaints. Progress notes indicated that the claimant had stopped taking most medications and in fact, he was not on any medications for his neck and back pain. Despite alleging an inability to work, it was the State Agency's impression that the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently and sit, stand, and walk (Ex. 2F). The claimant's alleged limitations appear to be more of a lifestyle choice than a constriction of interests due to physical or mental impairments. Accordingly, the undersigned finds the force of the record weighs heavily against the alleged intensity, persistence and limiting effects of the claimant's alleged symptoms. For these reasons the undersigned finds the claimant's . . . testimony less than fully credible.

REPORT AND RECOMMENDATION - 13

AR 22-23. These are all valid reasons for discounting a claimant's credibility. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (recognizing two grounds for using daily activities to discount credibility; first, they can "meet the threshold for transferable work skills," second, they can "contradict [the claimant's] other testimony."); Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999) (ALJ may discount credibility on basis of medical improvement); Tidwell, 161 F.3d at 601 (same); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding discounting of claimant's credibility in part due to lack of consistent treatment, noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain) Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered failure of physician to prescribe, and of claimant to request, serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only was suggestive of lower level of pain and functional limitation); Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (ALJ's determination that claimant's complaints are inconsistent with clinical observations can satisfy clear and convincing requirement); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not following prescribed course of treatment can cast doubt on sincerity of claimant's pain testimony).

While plaintiff argues the ALJ failed to cite specific evidence in the record to contradict his credibility, clearly the ALJ's decision shows otherwise, as the ALJ expressly noted his lack of compliance with medical treatment, his activities of daily living, the inconsistencies between his allegations and the medical evidence in the record, medical improvement, and prescription for conservative treatment only. Plaintiff asserts that contrary to the findings of the State Agency

REPORT AND RECOMMENDATION - 14

cited by the ALJ, the record is replete with treatment notes concerning his neck and back pain, as well as his mental impairments. As discussed above, though, the ALJ did not err in evaluating any of that evidence, nor has plaintiff pointed to anything specific in those treatment notes that would call into question that evaluation. For example, the mere fact that plaintiff may have been treated for certain impairments, does not alone establish disability or the presence of significant work-related limitations. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).

Plaintiff next argues the ALJ made no effort to explore his alleged inability to perform activities on a regular basis in a competitive work setting. But as discussed above, discounting credibility on the basis of activities that are transferrable to a work setting is only one way to do so. In addition, the ALJ may point to activities that contradict the claimant's other testimony. As noted by the ALJ, plaintiff's self-report of being able to pay bills, count change, handle a savings account, and use a checkbook and/or money orders, contradicts his claim of forgetfulness and lack of concentration. In addition, an ALJ is not required to make a specific finding as to a claimant's ability to work on a sustained basis, when – such as in this case – there is nothing in the record to suggest an inability to do so. See Frank v. Barnhart, 326 F.3d 618, 621 (5th Cir. 2003); Perez v. Barnhart, 415 F.3d 457, 466 (5th Cir. 2005) (noting claimant failed to offer any evidence his condition waxed and waned in intensity such that ability to maintain work was not adequately taken into account by ALJ). Accordingly, the undersigned finds no error in the ALJ's assessment of plaintiff's credibility here.

V.  The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

REPORT AND RECOMMENDATION - 15

2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

At the hearing, plaintiff's girlfriend testified as to her observations of plaintiff's physical and mental impairments and limitations. See AR 596-607. In his decision, the ALJ pointed out that her testimony "echoed the same symptoms and level of functioning as reported by" plaintiff, and, accordingly, he discounted her testimony for the same reasons that he discounted plaintiff's credibility. AR 22-23. In challenging the ALJ's findings here, plaintiff first asserts the ALJ did not provide specific, clear and convincing reasons for discounting the lay witness testimony. But this is not the proper standard for such testimony. Rather, as noted above, the ALJ must provide only germane reasons for doing so.

In addition, the undersigned finds the ALJ provided such reasons in this case. In a case substantially similar to this one, at least with respect to the lay witness testimony presented, the Ninth Circuit found in relevant part:

> [The lay witness's] testimony of her husband's fatigue was similar to [the claimant's] own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [the claimant's] allegations.' In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."

Valentine v. Commissioner Social Security Administration, 574 F.3d 685, 694 (9th Cir. 2009). Thus, here too the ALJ did not err in regard to his credibility analysis.

REPORT AND RECOMMENDATION - 16

## VI. The ALJ's Step Four Determination

Plaintiff has the burden at step four of the disability evaluation process to show that she is unable to return to his past relevant work. Tackett , 180 F.3d at 1098-99. While plaintiff argues the ALJ erred at this step of the sequential disability evaluation process, the undersigned agrees with defendant that it is unclear why he is so arguing, given that, as noted above, the ALJ found he could not perform his past relevant work. See AR 23. Even if plaintiff insists that some error still exists here, the undersigned declines to find any, as there is no indication that the substantial evidence in the record does not support the ALJ's step four determination.

## VII. The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000). The Grids may be used if they "*completely and accurately* represent a claimant's limitations." Tackett, 180 F.3d at 1101 (emphasis in the original). That is, the claimant "must be able to perform the *full range* of jobs in a given category." Id. (emphasis in the original). However, if the claimant "has significant non-exertional impairments," reliance on the Grids is not appropriate.[2] Ostenbrock, 240 F.3d at 1162; Tackett, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids).

---

[2] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION - 17

In this case, the ALJ found that because plaintiff could perform a full range of light work, and considering his age, education and work experience, as well as the existence of additional limitations that had "little or no effect on the occupational base of unskilled work," a finding of not disabled was appropriate under Grid Rule 202.21. AR 24. Plaintiff argues the ALJ erred in relying on the Grids here, asserting he failed to take into account his non-exertional limitations, including his posttraumatic stress disorder and depression. But posttraumatic stress disorder and depression are mere impairments. Nor does plaintiff point to any specific limitation that the ALJ should have adopted but did not do so. Indeed, as discussed above, because the ALJ did not err in evaluating the medical and other evidence in the record concerning plaintiff's physical and mental impairments, he was not required to adopt any in addition to those he already included in his assessment of plaintiff's ability to function. See AR 22. None of the limitations the ALJ did adopt precluded reliance on the Grids at this step.[3]

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was not disabled, and should affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn,

---

[3] The Grids "are directly premised on the availability of jobs at the unskilled level," and "'reflect the potential occupational base of *unskilled* jobs for individuals who have severe impairments which limit their exertional capacities. . . .'" Ortiz v. Secretary of Health and Human Services, 890 F.2d 520, 526 (1st Cir. 1989) (quoting SSR 85-15, 1985 WL 56857 at *1 (emphasis added by court of appeals)). As long as a non-exertional limitation is "substantially consistent with the performance of the full range of unskilled work," therefore, the Grids retain their "relevance and the need for vocational testimony is obviated." Id. Unskilled work generally requires the ability to understand, remember and follow simple instructions, which the ALJ found plaintiff could perform in addition to the exertional demands of light work. See AR 22; SSR 96-9p, 1996 WL 374185 *9; 20 C.F.R. § 416.921(b).

REPORT AND RECOMMENDATION - 18

474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **July 22, 2011**, as noted in the caption.

DATED this 6th day of July, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19